95
Sch A-4

ORIGINAL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**EDDIE JOE LLOYD and TIA TERESE GLENN,**

Plaintiff,

                                        Case No.  04-70922

v.

                                        Judge: Hon. Gerald E. Rosen
                                        Magistrate Judge: Steven D. Pape

**CITY OF DETROIT, WAYNE
COUNTY and THE STATE OF
MICHIGAN**

                Defendants.

_____/

U.S. DIST. COURT CLERK
EAST DIST. MICH
DETROIT-PSG
'04 NOV -2 P4:19
FILED

## NOTICE OF HEARING

TO:     CLERK OF COURT AND ALL COUNSEL OF RECORD

         PLEASE TAKE NOTICE that the attached Motion for Summary Judgment will be heard

at a date and time to be set by the court.

                            Respectfully submitted,

                            AZZAM E. ELDER (P53661)
                            Wayne County Corporation Counsel

BY: _James Surowiec_____
                        JAMES M. SUROWIEC (P49560)
                        Assistant Corporation Counsel
                        Attorneys for Defendant Wayne County
                        Wayne County Building
                        600 Randolph, Second Floor
                        Detroit, Michigan  48226
November 2, 2004                   (313) 224-6682
*#144256v1*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE JOE LLOYD and TIA TERESE GLENN,

        Plaintiffs,

                                  Case No.  04-70922

v

                                    Judge: Hon. Gerald E. Rosen
                                    Magistrate Judge: Steven D. Pape

CITY OF DETROIT, WAYNE
COUNTY and THE STATE OF
MICHIGAN

        Defendants.

_____/

### DEFENDANT WAYNE COUNTY'S MOTION FOR SUMMARY JUDGMENT

Defendant Wayne County, through its attorneys Azzam E. Elder, Wayne County

Corporation Counsel, Samuel Nouhan, Assistant Wayne County Corporation Counsel, and James

Surowiec, Assistant Wayne County Corporation Counsel, moves this Court to dismiss this action

pursuant to Fed. R. Civ. P. 12 (b)(6), and/or Fed. R. Civ. P. 56 for the reasons stated in the

accompanying brief and exhibits.  Counsel for Defendant requested concurrence from counsel for

Plaintiff but concurrence was not given. E.D. Mich L.R. 7.1(a).

                                Respectfully submitted,

                                **AZZAM E. ELDER (P53661)**
                                Wayne County  Corporation Counsel

                                **JAMES M. SUROWIEC (P49560)**
                                Assistant Corporation Counsel
                                Attorneys for Defendants
                                600 Randolph Street
                                Detroit, Michigan 48226
                                (313) 224-6682

Dated: November 2, 2004.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE JOE LLOYD,

        Plaintiff,

        Case No:. 04-70922

v.

        Judge: Hon.Gerald E. Rosen
        Magistrate Judge: Steven D. Pape

CITY OF DETROIT, WAYNE
COUNTY and THE STATE OF
MICHIGAN

        Defendants.

---

**DAVID ROBINSON (938754)**
Attorney for the Plaintiff
28145 Greenfield #100
Southfield, Michigan 48076

**AZZAM ELDER** (P53661)
Wayne County Corporation Counsel
**JAMES SUROWIEC** (P49560
Assistant Corporation Counsel
Attorneys for Wayne County
600 Randolph, Second Floor
Detroit, Michigan 48226
(313) 224-6682

**JOHN P. QUINN (P23820)**
Attorney for City of Detroit
660 Woodward, Suite 1650
Detroit, Michigan 48226
(313) 224-4550

**MARGARET A. NELSON (P30342)**
Assistant Attorney General
Attorney for the State of Michigan
PO Box 30736
Lansing, Michigan 48909
(517) 373-6434

---

## DEFENDANT WAYNE COUNTY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

FACTS AND PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **I**      WAYNE COUNTY IS ENTITLED TO SUMMARY JUDGEMENT BECAUSE PLAINTIFFS CANNOT SHOW THE EXISTENCE OF A COUNTY POLICY, OR SHOW THAT ANY SUCH POLICY WAS THE MOVING FORCE BEHIND ANY CONSTITUTIONAL VIOLATION

    **II**     CLAIM PRECLUSION BARS ISSUES THAT COULD HAVE BEEN RAISED IN EARLIER JUDICIAL PROCEEDINGS BUT WERE NOT. IN THIS §1983 ACTION, LLOYD ARGUES THAT HIS 6TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED. BUT BECAUSE HE FAILED TO RAISE THESE CONSTITUTIONAL ARGUMENTS IN EARLIER JUDICIAL PROCEEDINGS, THE ARGUMENTS ARE APPROPRIATELY BARRED BY CLAIM PRECLUSION.

    **III.**    WAYNE COUNTY IS ENTITLED TO SUMMARY JUDGEMENT BECAUSE THE 3 YEAR STATUTE OF LIMITATIONS ON THE *MONELL* CLAIM HAS RUN.

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## INDEX OF AUTHORITIES

<u>**Cases**</u>                                                                                            <u>**Page**</u>

<u>Arizona v. Fulminante,</u>
499 U.s. 279, 296; 111 S. Ct. 1246, 1257 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Bates v. Mercier,</u>
224 Mich App 122, 127 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Board of Regents v. Tomanio,</u>
446 U.S. 478, 488, (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>City of Oklahoma City v. Tuttle,</u>
471 U.S. 808, 823-824, 105 S. Ct. 2427, 85 L.Ed 2d 791, (1985) . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Claton v. Harris County,</u>
893 F. 2d 757, 758 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Conlin v. Blanchard,</u>
890 F. 2d 811, 815 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Coogan v. City of Wixom,</u>
820 F.2d 170, 176 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Energy Reserves, Inc. v. Consumers Power Co.,</u>
221 Mich App 210, 215-216 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>English v. Bousamra,</u>
9 F. Supp, 2d 803, 808 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Federal Dep't Stores Inc. v Moitie,</u>
452 U.S. 394, 398, 101 S. Ct 2424, 2428, 69 L.Ed.2d 103 (1981) . . . . . . . . . . . . . . . . . . . . 11, 12

<u>Gideon v. Wainwright,</u>
372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Hamill v. Wright,</u>
870 F.2d 1032 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Hancock v. Washtenaw County Prosecutor's Office,</u>
548 F. Supp 1255, 1256 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>In re El San Juan Hotel Corp,.</u>

i

841 F. 2d 6, 10-11 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In Re Recorders Court Bar Association,
443 Mich 110, 125-127 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

Jones v. State Farm Mut. Automobile Ins. Co.,
202 Mich App 393, 401 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Monell v. New York City Dept. Of Social Services,
436 U.S. 658, 98 S.Ct.2018, 56L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3,8

Orr v. Black & Furci,
876 F. Supp. 1270, (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v. Pearson,
404 Mich 698, 732 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Peterson Novelties, Inc. v. City of Berkley,
305 f.3d 386, 395 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Phinisee v. Rogers,
229 Mich App 547 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Polk v. Dodson,
454 U.S. 312, 321; 102 S.Ct. 445, 451 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Randles v. Gregart,
965 F. 2d 90, 93 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sanders Confectionery Prods, Inc. v. Heller Fin., Inc.,
973 F. 2d 474, 480 (6th Cir. 1992), cert. Denied, 506 U.S. 1079, 113 S. Ct. 1046, 122 L.Ed. 2d 355
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Server v. Turner,
742 F. 2d 262, 273 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

US v. Payne,
2 F. 3d 706, 710 (FN 2) (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wellington v. Daniels,
717 F.2d 932, 936 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Wilson v. Garcia,

471 U.S. 261, 266-68, 105 S.Ct 1938 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Woods v. Dunlop Tire Corp.,
972. F.2d 36, 38-39 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Court Rules**                                                                  **Page**

M.C.L.A §775.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

MCL §600.5851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**ISSUES PRESENTED**

I.  WAYNE COUNTY IS ENTITLED TO SUMMARY JUDGEMENT BECAUSE PLAINTIFFS CANNOT SHOW THE EXISTENCE OF A COUNTY POLICY, OR SHOW THAT ANY SUCH POLICY WAS THE MOVING FORCE BEHIND ANY CONSTITUTIONAL VIOLATION.

II  CLAIM PRECLUSION BARS ISSUES THAT COULD HAVE BEEN RAISED IN EARLIER JUDICIAL PROCEEDINGS BUT WERE NOT. IN THIS §1983 ACTION, LLOYD ARGUES THAT HIS 6TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED. BUT BECAUSE HE FAILED TO RAISE THESE CONSTITUTIONAL ARGUMENTS IN EARLIER JUDICIAL PROCEEDINGS, THE ARGUMENTS ARE APPROPRIATELY BARRED BY CLAIM PRECLUSION.

III.  WAYNE COUNTY IS ENTITLED TO SUMMARY JUDGEMENT BECAUSE THE 3 YEAR STATUTE OF LIMITATIONS ON THE *MONELL* CLAIM HAS RUN.

iv

## FACTS AND PROCEEDINGS

In 1984, Plaintiff Eddie Joe Lloyd was convicted by a jury for the rape and murder of 16 year-old Michele Jackson of Detroit. (Complaint ¶ 94) Lloyd gave both a tape recorded and signed confession admitting to the crime. The confession contained specific, non-public details about the crime that only the police and the real killer would have known. (Complaint ¶ 55,57,58) Plaintiffs (Eddie Joe Lloyd and his daughter Tia Glenn) allege that Lloyd's confession was fabricated by police who manipulated him due to his unstable mental condition. (Plaintiffs' Complaint ¶ 4, 55) Lloyd was represented by state-appointed counsel throughout his trial and on appeal. (Complaint ¶ 84, 96) Lloyd was eventually released from prison after DNA tests showed that semen collected from the murder scene did not match his DNA. (Complaint ¶ 109,110, 112)

Attorney Charles Lusby was originally appointed as Lloyd's legal counsel. (Complaint ¶ 84) Lusby had to withdraw as Lloyd's counsel on the day of trial due to illness. Judge Townsend appointed attorney Stanford Rubach in his place. (Complaint ¶ 88) After a three day jury trial, Lloyd was convicted. (Complaint ¶94) Judge Townsend appointed Attorney Robert Slamcka to represent Lloyd on appeal, however, the conviction was affirmed. (Complaint ¶ 96, 97, 100).

The quality of Lloyd's appointed legal representation is the basis of this action against Wayne County. Plaintiffs claim that Lloyd's 6th and 14th Amendment rights were violated by a County custom and policy of providing grossly inadequate compensation to attorneys representing indigent criminal defendants. (¶ 124-126, 199-203) Plaintiffs' policy argument is broken down into the following categories:

    **(A)** <u>Inadequate pay schedule for appointed attorneys</u>. (Complaint ¶ 124, 201);

    **(B)** <u>Incompetent attorneys representing the indigent</u>. (Complaint ¶ 124, 201);

    **(C)** <u>Inadequate funding for pre-trial investigation</u>. (Complaint ¶ 123).

1

## LEGAL ARGUMENT

I     **WAYNE COUNTY IS ENTITLED TO SUMMARY JUDGEMENT BECAUSE PLAINTIFFS CANNOT SHOW THE EXISTENCE OF A COUNTY POLICY, OR SHOW THAT ANY SUCH POLICY WAS THE MOVING FORCE BEHIND ANY CONSTITUTIONAL VIOLATION.**

### ANALYSIS

In the landmark case of Gideon v. Wainwright, 372 U.S. 335 (1963) the United States Supreme Court ruled that if an accused is unable to retain counsel, then they are entitled to have counsel appointed at public expense. The State of Michigan follows Gideon and provides the statutory authority to compensate attorneys for representing the indigent through M.C.L.A. §775.16.[1] The rate of reimbursement is set by the chief judge based on a reasonableness standard and the County is required to fund the program. (M.C.L.A. 775.16.)

The Michigan Supreme Court has ruled that neither the statute nor the fee schedule provides a source of constitutional rights or guarantees to indigent criminal defendants. The statute merely provides a vehicle through lawyers may be paid "something" for representation that otherwise would have been performed "pro bono." In Re Recorders Court Bar Association, 443 Mich 110, 125-127 (1993). But here, the Plaintiffs attempt to distort a statutory payment provision for attorneys into a source of Constitutional rights for Eddie Lloyd. The argument is without merit.

Plaintiffs' advance a §1983 Monell claim against Wayne County alleging violations of the Constitution through a custom policy or practice. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). However, the Sixth Circuit has

---

[1]MCLA §775.16 provides that an attorney appointed by the court to represent an indigent criminal defendant *"shall be entitled to receive from the county treasurer, on the certificate of the chief judge that the services have been rendered, the amount which the chief judge considers to be reasonable compensation for the services performed."*

2

stated that to satisfy the requirements of <u>Monell</u> and in order to maintain a suit against a local governmental entity, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." <u>Coogan v. City of Wixom</u>, 820 F.2d 170, 176 (6th Cir. 1987) Plaintiffs must also show that the governmental policy is the "moving force" behind the challenged conduct in order for the municipal government to be liable. <u>Monell</u>, 436 U.S. at 694; <u>Searcy v. City of Dayton</u>, 38 F.3d 282, 286 (6th Cir. 1994) Proof merely that such a policy or custom was 'likely' to cause a particular violation is *not* sufficient; there must be proven at least an affirmative link between policy or custom and violation; in tort principle terms, the causal connection must be "proximate,' not merely 'but-for' causation in fact. <u>Spell v. McDaniel</u> 824 F.2 1380, 1388 (4th Cir. 1987); <u>Wellington v. Daniels</u>, 717 F.2d 932, 936 (4th Cir. 1983).

Furthermore, the Supreme Court has ruled that there must be additional proof of an existing unconstitutional municipal policy or where the policy itself is not unconstitutional, *considerably more proof than a single incident is needed.*

> Proof of a single incident of unconstitutional activity is not
> sufficient to impose liability under Monell, unless proof of the
> incident includes proof that it was caused by an existing,
> unconstitutional municipal policy .... but where the policy relied
> upon is not itself unconstitutional, considerably more proof than
> the single incident will be necessary in every case to establish both
> the requisite fault on the part of the municipality, and the causal
> connection between the policy and the constitutional deprivation.

<u>City of Oklahoma City v.Tuttle</u>, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 85 L.Ed 2d 791, (1985).

The requirements of <u>Monell</u> are clear and direct— there must be a policy affecting more than a single situation, and that policy must be the proximate cause of the constitutional injury. Here, there is no proof that the fee schedule is facially unconstitutional. There is no evidence that appointed lawyers provided systematic ineffective assistance of counsel back in 1985

3

because of the fee schedule. Contrary to the Supreme Court, Plaintiffs attempt to establish Monell liability through a single incident— Eddie Lloyd's conviction.

## A    Policy of Inadequately Compensating Appointed Attorneys

Plaintiffs cannot show that the fee schedule was insufficient in "1985" dollars. More importantly, Plaintiffs cannot establish that the majority of indigent criminal defendants received ineffective assistance of counsel based solely on the fact that their lawyers were appointed lawyers. Even if Plaintiffs could show that Attorney Rubach, Lusby, or Slameka erred on Lloyd's case, they would then have to **disprove** the possibility that mistakes were due to accident, ignorance, negligence, fatigue, pressure, nervousness or any other human factor affecting every practicing attorney— appointed or retained. Plaintiffs would have to show that attorney error occurred because of the fee schedule and that similar errors occurred on significant numbers of other appointed cases because of the fee schedule. Plaintiffs would have to analyze the substance of each conviction in order to determine whether or not appointed counsel was effective, and then link the performance to the fee schedule.

To suggest that Lloyd would have been acquitted if his lawyers had been better compensated fails to appreciate any rational concept of causation and is speculative at best. More importantly, it fails to recognize the historic obligation of lawyers to represent clients to the best of their abilities, regardless of pay. The Michigan Supreme Court rejected the suggestion that low fees on appointed cases could somehow affect the 6th Amendment rights of an indigent criminal defendant. In Re Recorders Court Bar Association, supra at 127 (1993). The Court in interpreting the attorney compensation provision of MCL §775.16 held the following:

> . . .[W]e note that there is no indication that the original legislation,
> or any subsequent amendment of the statute was motivated by a

4

> belief that the failure to provide compensation to appointed counsel
> made it either difficult for indigent criminal defendants to obtain
> legal representation or that indigent criminal defendants were
> receiving ineffective representation. Indeed, this Court has refused
> to find that attorneys would shirk their professional obligations to
> provide competent and diligent legal representation to any client
> regardless of pay. *Id.* at 127. (Emphasis added)

In <u>Polk v. Dodson</u>, 454 US 312, 321; 102 S.Ct. 445, 451 (1981), the Supreme Court held that a defense attorney when acting in the role of an advocate is not the servant of an administrative superior and accordingly cannot "permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgement in rendering such legal services.[2]  <u>Id</u>. at 322.

Plaintiffs' theory of liability based on inadequate compensation, while novel, is simply unsupportable even under the most radical interpretation of <u>Monell</u>.  The theory presumes that the Government is able to guarantee the performance of court appointed lawyers to be free from mistakes, defects, and other human frailties.  Such an approach is simply unrealistic. Furthermore, the ethical obligations of all lawyers to represent the client to the best of their abilities is the intervening factor preventing the "money issue" from ever being considered as a causal factor contributing to the harm in this case.  Because Plaintiffs cannot show the existence of an unconstitutional County policy, or demonstrate that such a policy caused the harm here or in any other appointed case, the claim must fail.

---

[2]In that case, Chief Justice Burger concurring wrote that "it is important to emphasize that in providing counsel for an accused the governmental participation is very limited.... The advocate, as an officer of the court which issued the commission to practice, owes an obligation to the court to repudiate any external effort to direct how the obligations of the client are to be carried out.  The obligations owed by the attorney to the client are defined by the professional codes, not by the governmental entity from which the defense advocates compensation is derived.

## B.     Policy of appointing Incompetent Lawyers.

The next claim is that the County created a system in which the least qualified attorneys would represent indigent defendants in capital cases.(Complaint ¶ 124) However, the legal theory that a state judge's decision regarding the appointment of counsel for the indigent somehow constitutes a County policy is plainly incorrect.

The US Court of Appeals has held that a County government is not responsible for the acts of a state judge in appointing counsel for indigent defendants. Clanton v. Harris County, 893 F. 2d 757, 758 (5th Cir. 1990); Hamill v. Wright, 870 F.2d 1032 (5th Cir. 1989) This is a highly persuasive holding because of the identical facts in this case. In Michigan, judges are employees of the State— not County actors. (Exhibit C)[3] Because Judge Leonard Townsend is a state actor, his selection of counsel for Lloyd does not constitute County action and cannot be interpreted as a County policy. Accordingly, Plaintiffs' argument fails.

On a final note, while Plaintiffs characterize Lloyd's appointed attorneys as "grossly incompetent", their Complaint contains the same arguments and theories advanced by Attorney Rubach during Lloyd's trial from 1985.[4] Interestingly, while the organization had access to his

---

[3] Exhibit C- On September 1, 1981,  the State took over the operation of all circuit and district courts throughout Michigan. (MCL§ 600.593)

[4]Judge Townsend appointed Stanford Rubach to represent Lloyd.  At trial, Rubach argued that Lloyd's confession was not the product of truth, but rather, a fabricated story born from Lloyd's mental illness. (Trial Transcript April 30, 1985 Vol. I page 52: hereinafter referred to as VI p#) In opening statements, Rubach told the jury that Lloyd was a "vociferous" letter writer who believed that he was responsible for solving the Oakland County Murder cases and that he was entitled to various reward money.  Lloyd was specifically interested in the details of Michelle Jackson's case to the degree that he filed papers under the Freedom of Information Act so he could find out more about the facts surrounding her death. (VI p 53)  Rubach highlighted the fact that Lloyd was bi-polar, that he had been involuntarily committed by court order and medicated because of his mental illness.  Rubach brought to light the fact that Lloyd's grandiosity made him believe he had more knowledge and special powers to help the police solve crimes. Rubach established these facts through the psychiatrist and the social worker who evaluated Lloyd at Herman Keifer Psychiatric Hospital.  (VI pp 20-26 and pp 33-39)  Rubach

6

trial transcripts in 1995, they declined to help until they could verify that DNA evidence was still available for re-testing. (Exhibit D)

## C.     **Policy of allotting $150 for investigation fees**

Plaintiffs argue that the $150 allocated for investigation on indigent criminal cases was insufficient to challenge the scientific evidence, thus denying his constitutional right to a fair trial. The argument is speculative and without merit. What amount of money would it take to satisfy the Constitution? Would five hundred dollars have been sufficient, or perhaps ten thousand dollars?

Plaintiffs fail to allege that either attorney ever requested additional testing of the evidence, nor do they claim that the trial court denied any requests for further investigation because of the fee limitations. The only record request for investigation made by Attorney Lusby on March 1,1985 was for the appointment of an investigator. The Court asked if the fee schedule allowed for investigation and then stated on the record: "I would have no objection to it, Mr. Lusby, within reasonable grounds. Since this is a serious matter, I wouldn't want to leave any avenue unexplored."(Walker Hearing March 1, 1985 p. 5)   Furthermore, under Michigan law, the Court can require the Prosecutor's Office and the Police Department to assist the defense

---

pointed out that although Lloyd confessed to a rape in 1974 there were no records or complaints that the event had in fact occurred. He established through cross examination that Lloyd was "confessing not because he did it but because this would bring out the true criminal or true perpetrator" of the offense. (VIII p 12)  In his closing argument, Attorney Rubach explained to the jury that the homicide occurred in January of 1984 and police didn't question Lloyd until October of 1994. He argued to the jury that Lloyd had 9 months to inspect the scene, examine the abandoned building, and get details about the case so he could put pieces of the puzzle together himself. (VIII 34,35,36,37) Rubach's trial strategy was that Lloyd's confession was delusional and the product of mental illness. It appears that the Plaintiffs crafted most of the facts in their complaint borrowing from the arguments made by attorney Rubach at trial.

7

with investigation and location of witnesses. See People v. Pearson, 404 Mich 698, 732 (1979). State assistance for the indigent is not limited solely to the fee schedule.

In the absence of any evidence, Plaintiffs cannot show that any County policy infringed upon his constitutional rights. Plaintiffs cannot show that any of Lloyd's attorneys requested assistance but were denied due to the fee schedule. Plaintiffs can only speculate as to what the court's ruling "might have been" if the request had been made.

## D.    The Moving Force Requirement of **Monell**

Monell requires the Plaintiff to show that the policy or custom was the proximate cause of a constitutional harm. "Proof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient." Spell, supra at1388. Plaintiff must prove an affirmative link between policy or custom and violation. Id.   Despite Monell's strict causation requirement, Plaintiff points to a laundry list of reasons why Lloyd was convicted. This shotgun approach to causation contradicts the requirements of Monell. Plaintiff wants everything to be the moving force behind the injury.

### 1)    Lloyd's confession

There are a multitude of factors that stand in the front of the "causation line" far ahead of the fee schedule. First and foremost, Lloyd caused his own injury by confessing to a crime he did not commit. The Supreme Court in Arizona v Fulminante, 499 US 279, 296; 111 S.Ct. 1246, 1257 (1991), recognized the great weight that a confession can have upon a criminal Proceedings:

> "A defendant's confession is like no other evidence. It is probably the most probative and damaging evidence that can be admitted against him, and, if it is a full confession, the jury may be tempted

8

to rely on it alone in reaching its decision."

Because Lloyd confessed , he changed the entire complexion of the criminal proceedings against him. (Complaint ¶4) By admitting to the rape and murder, Lloyd became the "moving force" causing his conviction -- ahead of any other factor in this case.

### 2)    Police misconduct

The Plaintiffs claim that Lloyd's conviction was the product of a coerced, fabricated confession which was unlawfully obtained and then concealed by defendant police officers. Plaintiffs state that the police used "trickery, coercion, deceit, recklessness, bad faith and manipulation" to gain the conviction of Lloyd. Police then allegedly lied under oath regarding the circumstances of his confession.(Complaint ¶s 4,56, 61, 62, 63) Because the Plaintiffs paint such a sinister picture of willful police misconduct, how could the fee schedule be the proximate cause of the injury? Clearly the alleged misconduct of the Detroit Police would constitute the "moving force."

### (3)    Claim of Malpractice

If Lloyd wanted to sue his lawyers for malpractice, then he should have done so before the statute of limitations expired. Although Plaintiffs points to mistakes made by the court appointed lawyers, nothing stated in the complaint or in the trial record demonstrates that any of his attorneys were prevented from adequately defending the case due to any actual or perceived limitations of the assigned fee schedule. (Complaint ¶ 18, 19, 85, 86, 87, 89, 91, 92, and 93) Based on the complaint, this Court can only conclude that any mistakes made by the attorneys are unique to this case. Plaintiffs cannot show a widespread or systemic problem with the court appointed system. In the absence of such a showing, this court can only conclude that any mistake would be tantamount to individual human error— not a county policy.

9

**II      CLAIM PRECLUSION BARS ISSUES THAT COULD HAVE BEEN
RAISED IN EARLIER JUDICIAL PROCEEDINGS BUT WERE NOT.
IN THIS §1983 ACTION, LLOYD ARGUES THAT HIS 6TH AND
14TH AMENDMENT RIGHTS WERE VIOLATED. BUT BECAUSE
HE FAILED TO RAISE THESE CONSTITUTIONAL ARGUMENTS
IN EARLIER JUDICIAL PROCEEDINGS, THE ARGUMENTS ARE
APPROPRIATELY BARRED BY CLAIM PRECLUSION.**

## ANALYSIS

After Lloyd was convicted, he unsuccessfully appealed his conviction to the Michigan

Court of Appeals, the Michigan Supreme Court, and the United States District Court. In 1987

the Court of Appeals affirmed the conviction and the Michigan Supreme Court denied leave to

appeal. (Exhibit A) In 1992, US District Court Judge Bernard A. Friedman denied Lloyd's pro

per habeas petition on the merits. (Exhibit B)   Lloyd failed to argue ineffective assistance of

counsel in either appeal.[5]   Lloyd also failed to file a malpractice claim against any of his

appointed lawyers.[6]

Claim preclusion (res judicata) bars claims that **could have been brought** during earlier

judicial proceedings but were not. Jones v. State Farm Mut. Automobile Ins. Co., 202 Mich App

393, 401,(1993); Federated Dep't Stores Inc v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428,

69 L.Ed.2d 103 (1981). Under Michigan law, Claim Preclusion bars a cause of action where: (1)

[a] former suit was decided on the merits, (2) the issues in the second action were or could have

been resolved in the former action, and (3) that both actions involved the same parties or their

---

[5]While Lloyd complains he had no input on his appeal of right in the state appellate court
system, Lloyd authored his own habeas petitions in federal court. In his pro per habeas petition,
Lloyd did not raise ineffective assistance of counsel or any 14th Amendment claim.

[6]See in general Barrow v. Prichard, 235 Mich App 478, 485 (1999) "Although case-law
discussion of the requirements to establish ineffective assistance of counsel and legal malpractice
may contain language disparity, we believe the standards are sufficiently similar in substance to
support the application of the defense of collateral estoppel."

privies.   Energy Reserves, Inc v. Consumers Power Co, 221 Mich App 210, 215-216 (1997).

Under federal law, the defendant must establish: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.   Sanders Confectionery Prods, Inc. v Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992), cert. Denied, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

Because Lloyd failed to raise the 6th or 14th amendment arguments in earlier judicial proceedings, the claim is barred by claim preclusion. He is now attempting to argue the 6th and 14th Amendment claims for the first time under the cloak of §1983.[7]  These claims should have been raised seventeen years ago.

A)      **Final Judgement on the merits**

Under both state and federal law, there must be a final decision on the merits by a court of competent jurisdiction.  Both the Court of Appeals opinion (Exhibit A) and Judge Friedman's written opinion (Exhibit B) constitute final decisions on the merits for purposes of claim preclusion.  Accordingly, the first prong of the test is satisfied.

B)      **Issues that could have been litigated**

Both Michigan and federal law look to whether there was an issue in the subsequent action that should have been litigated in the prior action.  "Michigan has adopted a broad application of res judicata that bars claims arising out of the same transaction that plaintiff could have brought but did not."  Jones v. State Farm Mut. Automobile Ins. Co., 202 Mich App 393,

---

[7]A finding that Lloyd's Due Process rights were violated would first require a showing that his 6th Amendment Right to Counsel was violated.

401, 509 N.W.2d 829 (1993). Federal Courts take a similar approach in that "[g]enerally speaking, a plaintiff is precluded from litigating issues that could have been or should have been raised in an earlier action. Federated Dep't Stores, Inc., v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L. Ed2d 103 (1981)  Even claims based upon different legal theories are barred provided they arise from the same transactions or occurrence. Woods v. Dunlop Tire Corp., 972 F.2d 36, 38-39 (2d Cir. 1992).

The essence of this claim is that the court appointed lawyers were constitutionally deficient because they were underpaid. Regardless of the way the claim is phrased, the claim is either a 6th Amendment claim of ineffective assistance of counsel or a malpractice claim against the attorneys.[8] The arguments were never raised in state or federal court. Except for the new DNA technology that only became available around the year 2000, all of the information known now was known back in 1985 and the trial transcripts were available. If the attorneys made mistakes of a constitutional magnitude in 1985, Lloyd should have raised the issue then.

## C.    Same Parties or their Privies

Under Michigan law, the test to determine whether privity exists between a party and a non-party requires "both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non party are presented and protected by the party in the litigation." Phinisee v. Rogers, 229 Mich App 547 (1998).[9]

---

[8]  In Orr v. Black & Furci, 876 F.Supp.1270, (1995)  the United States District Court held that collateral estoppel should apply to criminal defendants who raise unsuccessful ineffective assistance of counsel claims and then seek damages for attorney malpractice because it gives them two bites at the apple. Although the argument in this case is claim preclusion and not collateral estoppel, the principal of law is relevant.

[9]It is undisputed that Eddie Joe Lloyd is a party to both actions and Wayne County is a named defendant in the instant suit.

12

Under federal law, privity means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented. Sanders Confectionery Prods., Inc. v. Heller, 973 F.2d 474, 481 (6th Cir.1992), cert.denied, 506 U.S.1079, 113 S.Ct.1046, 122 L.Ed.2d 355 (1993). This Court should note that "many federal circuits have left behind the traditional mutuality requirement for some defensive uses of claim preclusion." Peterson Novelties, Inc., v. City of Berkley, 305 F.3d 386, 395 (6th Cir. 2002) "Under certain circumstances, a defendant in a subsequent action can take advantage of the claim-preclusive effect of a prior judgement involving the same plaintiff and different defendants." See Randles v Gregart, 965 F.2d 90,93 (6th Cir. 1992); In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988).

The only issue is whether Wayne County was a party to the prior criminal case through the actions of its own Prosecutor's Office.[10] Wayne County is clearly a successor in interest to that earlier criminal action, and there is privity between the County and its own branch of government. In US v. Payne, 2 F.3d 706, 710 (FN 2) (6th Cir.1993) the Court ruled that the United States Post Office and the United States Government were in privity with one another and that there was mutuality of parties. In Hancock v.Washtenaw County Prosecutor's Office, 548 F.Supp 1255, 1256 (1982), the Court ruled that a county prosecutor's office is not a legal entity capable of being sued under §1983. That fact that a suit against the prosecutor's office is only properly brought against the municipality demonstrates that Wayne County is in privity with its own County Prosecutor's Office. Regardless, the federal approach does not to require mutuality

---

[10]When prosecuting criminal cases on behalf of the People of the State of Michigan, the Wayne County Prosecutor's Office is in privity with the state and thus a party to the action. People v. Gates, 434 Mich 146,156, 452 N.W.2d 627, 630 (1990)

13

of parties for defensive applications of claim preclusion.

## D.    An Identity of causes of action

This fourth element of claim preclusion found only in the federal test, requires that there

be an "identity in the causes of action."  In China Tire Holdings, v. Goodyear Tire & Rubber, the

District Court held that:

> [T]he application of claim preclusion is not dependent on the
> specific facts or evidence a party seeks to cite in support of a claim.
> If such was the case, parties could easily avoid the application of
> claim preclusion by simply changing, ever so slightly, the facts
> upon which they base their claim.  Instead, claims constitute the
> same cause of action for purposes of claim preclusion when they
> arise out of the same transaction and occurrence, or the same core
> of operative facts.  Id., 91 F. Supp.2d 1106, 1110 (2000) (Emphasis
> added)

Any argument that Lloyd's 6th and 14th Amendment rights were violated is a claim of

ineffective assistance of counsel or attorney malpractice.  The same core facts exist within each

case.  Lloyd could have raised this exact issue in the earlier judicial proceedings but failed to do

so.  Summary Judgement is proper because prior state and federal judgements preclude

consideration of the claim.

> ### III.    WAYNE COUNTY IS ENTITLED TO SUMMARY
> JUDGEMENT BECAUSE THE 3 YEAR STATUTE
> OF LIMITATIONS ON THE *MONELL* CLAIM HAS
> RUN.

## ANALYSIS

Lloyd was convicted on May 2, 1985. (Complaint ¶ 94)  He was incarcerated from

November 1, 1984 until August 26, 2002. (Complaint ¶ 101)  His daughter (Plaintiff Tia Glenn)

was eleven years old at the time. ( Complaint ¶102)  Plaintiffs served Wayne County with this

law suit on March 11, 2004— 16 years after the expiration of the statute of limitations.

In <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-68, 105 S.Ct. 1938 (1985), the Supreme Court held that the statute of limitations in all section 1983 claims is the state statute of limitations governing actions for personal injury. **In Michigan that period is three years**. MCLA §600.5805(10); <u>Conlin v. Blanchard,</u> 890 F.2d 811, 815 (6th Cir. 1989). Federal law governs the question of when the limitations period begins to run. <u>Sevier v. Turner,</u> 742 F. 2d 262, 273 (6th Cir. 1984) The claim accrues when all of the elements come into existence and when the wrong is done. <u>Id</u> at 273. The federal courts follow the state's tolling provisions. <u>Board of Regents v. Tomanio,</u> 446 U.S. 478, 488 (1980).

## Disabilities that Toll the Statute

MCL § 600.5851 recognizes two disabilities that may prevent a person with a cause of action from asserting it. They are infancy (being less than 18 years old) and insanity. A person who suffers from either disability when the claim accrues has one year upon the removal of the disability to pursue the claim regardless of the running of the statute of limitations. Plaintiffs bear the burden of demonstrating that they are entitled to the benefit of the Michigan disablement statute. <u>English v. Bousamra,</u> 9 F. Supp. 2d 803, 808, (1998).

Insanity is a "condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared insane." MCL § 600.5851(2) In order to toll the running of the statute "§5851(2) requires mental derangement sufficient to prevent the sufferer from comprehending the sufferer's rights." <u>Bates v. Mercier,</u> 224 Mich App 122, 127 (1997). Simply stated, Eddie Lloyd must show that he did not comprehend that his legal options.

Lloyd cannot support that he was continuously deranged while in prison. In fact, it is apparent that Mr. Lloyd had access to the courts and knew enough to avail himself of the

15

appellate process in state and federal court. (Complaint ¶ 100)  From the time he went to prison, he consistently wrote to the courts (Exhibit E) and even grieved the prosecutor on the case. (Exhibit F)  In 1995, he contacted the Innocence Project to seek assistance in obtaining the testing of biological evidence that ultimately resulted in his release from prison. (Complaint ¶ 107 and Exhibit G)  He also filed two federal habeas petitions and at least two §1983 cases pro per. (Complaint ¶104 and Exhibit H)

The lawsuit accrued on the day Lloyd was convicted but the Plaintiffs' fails to show that Lloyd was continuously deranged such that he did not understand his rights.  Under the existing facts, it is clear that the Plaintiffs' claims are time barred as are any claims asserted by his daughter.

## REQUEST FOR RELIEF

Defendant Wayne County requests this Honorable Court to enter an order granting summary judgment in Defendant's favor, and dismissing Plaintiffs' claims with prejudice.

Respectfully submitted:

AZZAM E. ELDER
Wayne County Corporation Counsel

BY:  JAMES M. SUROWIEC (P49560)
Assistant Corporation Counsel
Attorneys for Defendant Wayne County
600 Randolph Street, Second Floor
Detroit, Michigan 48226
(313) 224-6682

DATED: November 2, 2004

#144256v1

16

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**EDDIE JOE LLOYD and TIA TERESE GLENN,**

                Plaintiffs,

                                         Case No. 04 70922
                                         US District Judge: Hon. Gerald E. Rosen

v

                                         US Magistrate Judge: Hon. Steven D. Pape

**CITY OF DETROIT, WAYNE
COUNTY and THE STATE OF
MICHIGAN,**

                Defendants.

_____/

## PROOF OF SERVICE

STATE OF MICHIGAN)
                  )ss
COUNTY OF WAYNE)

        The undersigned, being first duly sworn, deposes and says that she placed in the United

States Mail, postage prepaid, a copy of the following, properly addressed:

DATE:               November 2, 2004

DOCUMENTS:     Defendant Wayne County' Motion for Summary Judgment, Brief in
                       Support of Motion for Summary Judgment, Notice of Hearing and Proof
                       of Service

ADDRESSEES:    David Robinson                    John P. Quinn
                   28145 GreenField #100        1650 First National Bldg.
                   Southfield, MI 48076          Detroit, MI  48226

                   Margaret Nelson
                   Attorney General's Office
                   P.O. Box 30736, Lansing MI 48909

Subscribed and sworn to before me
on this 2nd day of November, 2004

_Theresa Marshall_

Notary Public
Acting in County of Wayne, State of Michigan
My Commission Expires: _8-18-2006_
#144256v1

                          **THERESA A. MARSHALL**
                          Notary Public, Wayne County, MI
                       My Commission Expires Aug. 18, 2006

# INDEX OF EXHIBITS

| EXHIBIT | CONTENT OF EXHIBIT | PAGE # |
|---|---|---|
| "A" | • 1987 Court of Appeals Opinion<br>• 1988 Michigan Supreme Court Order- leave denied | Pp. 10, 11 |
| "B" | • US District Court, ED- Opinion on Habeas petition<br>• Plaintiff Lloyd's Pro Per Habeas petition | Pp. 10, 11 |
| "C" | • MCLA § 600.593 | P. 6 |
| "D" | • Letters from the Innocence Project to Lloyd | P. 7 |
| "E" | • 1987 letter to Court Clerk<br>• 1988 letter to Court Clerk<br>• 1999 letter to Court Clerk | P.16 |
| "F" | • Lloyd's Grievance against Prosecutor Tim Kenny | P.16 |
| "G" | • 1995- Plaintiff Lloyd letter to the Innocence Project | P.16 |
| "H" | • 1991- Habeas Petition /1992- §1983 claim / 1993 civil<br>rights action /1994- §1983 claim/ 2001- §1983 claim | P.16 |



850376

S T A T E   O F   M I C H I G A N

C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EDDIE JOE LLOYD,

      Defendant-Appellant.

JUL 16 1987

No. 86045

---

BEFORE:  D. E. Holbrook, Jr., P.J., and R. S. Gribbs and
       C. W. Simon*, JJ.

PER CURIAM

      Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548. Sentenced to life in prison, he appeals as of right raising two issues. We affirm.

      The victim, Michelle Jackson, lived with her cousin Jodie Kenny and other family members on Wildemere near Fenkell in the City of Detroit. On January 24, 1984, at approximately 6:45 to 7:00 a.m., Michelle Jackson left her home to go to school. She was last seen by a neighbor walking toward Fenkell and then standing in the doorway of a church near a bus stop on Fenkell. According to Jodie Kenny, Michelle was expected home at 4:00 p.m. to baby-sit. By 6:00 p.m. when Michelle had not yet arrived, her cousin became worried and started calling friends and family. Jodie learned that Michelle had not been in school all that day which was unusual because it was final exams day. The following day Jodie and others searched the neighborhood, finding Michelle's partially nude body in an abandoned garage. A pair of long underwear wrapped around her neck indicated that she had been strangled. This was confirmed by the medical examiner who also noted that she had been strangled manually. Her belongings were scattered around the garage. When Michelle's body was later turned over by police, a green beer bottle fell from the rectal

---

*Circuit Judge sitting by assignment on the Court of Appeals.

area. Presence of sperm was detected in both the victim's vagina and rectum. Following the discovery of the body, the garage was sealed off. None of the details of the scene were revealed to the media.

In October 1984, Officer Sylvia Millener of the sex crimes unit received correspondence from defendant indicating that he knew about the murder of Michelle Jackson. Millener gave the letter to Officer Thomas Degalan of the homicide department who was in charge of the Jackson investigation. On October 18, 1984, both officers went to see defendant at the Detroit Psychiatric Institute where he had been involuntarily committed on September 28, 1984. The officers first spoke with defendant's treating psychiatrist and social worker who each asked defendant if defendant wished to speak with the officers. Defendant agreed. At the first interview defendant told the officers about a beer bottle being found and stated that he had met a man in a party store who told defendant that he had committed the murder. Defendant then began talking about a rape which he had committed in 1974. The details defendant gave of the 1974 rape scene and description of the victim were almost identical to the scene of the present case and the description of Michelle Jackson.

Officer Degalan returned to the Institute to interview defendant again on October 23, 1984 in response to a letter sent to him by defendant. During that interview, defendant started talking about the Michelle Jackson case and about the bottle. He then stated, "I want to confess to the killing of Michelle Jackson". Defendant went on and told in exact detail how Jackson was killed and where her belongings had been scattered. At this time he also noted that the beer bottle which was found was a green one. This information was not known to anyone except the investigating police officers.

Officer Degalan returned to talk with defendant on October 25. At that interview defendant drew earrings that belonged to Michelle Jackson.

On October 26, Officer Degalan returned to the Institute with Officer Rice, advised defendant of his rights, and that he was under arrest for the murder of Michelle Jackson. At this time defendant gave both written and taped statements of his confession.

On appeal defendant first contends that the trial court erred in admitting his confession. Defendant contends that he should have been read his Miranda[1] warnings prior to any questioning taking place since he was in a "custody interrogation" setting, i.e., he was involuntarily committed. We disagree.

The voluntariness of a confession must be determined from all the facts and circumstances including the duration of a detention, the manifest attitude of the police towards the suspect, the physical and mental state of the suspect and the pressures which may sap or sustain the suspect's powers of resistance. People v Belknap, 146 Mich App 239, 241; 379 NW2d 437 (1985), People v Lumley, 154 Mich App 618, 620; ___ NW2d ___ (1986). We are of the opinion that, even though defendant was diagnosed as suffering from a manic depressive mental illness, by the time he gave his confession he was being successfully treated. Further, defendant himself wrote to the police officers stating that he could help them and that he wanted to speak with them. Defendant voluntarily agreed to interview with the officers once they arrived at the Institute. Finally, defendant voluntarily, without prior questioning, stated that he killed Michelle Jackson. Although by the time of the second interview, defendant may have been a suspect, the entire circumstances indicate that his confession on October 23, 1984, was voluntary.

Even assuming that defendant's first confession was involuntary, defendant gave a second confession on October 26 before which he was read his rights and waived those rights. The

___

[1] Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-3-

circumstances of the confession indicate that it also was voluntary. Nor would the first confession taint the second by any pressure defendant was under once the "cat was out of the bag". See Oregon v Elstad, 470 US 298; 105 S Ct 1285; 84 L Ed 2d 222 (1985); People v Bieri, 153 Mich App 696, 706; ___ NW2d ___ (1986).

Defendant's second argument on appeal is that the court abused its discretion by refusing to suppress defendant's prior convictions for armed robbery and larceny in a building. He argues that his previous convictions are not offenses which bear directly on credibility. Defendant contends that, as a result of the court's ruling, he did not testify and there was no other witnesses to bring forth his position with regard to the confession.

The applicable law with regard to admission of prior convictions was well stated in People v Wesley, ___ Mich App ___ (Docket No. 89597; Rel'd 5/4/87):

"The relevant Michigan rule of evidence for impeachment by prior convictions is MRE 609, which provides that a witness can be impeached by prior convictions if the crimes were punishable by death or imprisonment in excess of one year or if the crime involved theft, dishonesty or false statement. In addition, the court is instructed by the rule to determine that the probative value of the evidence outweighs its prejudicial effect.

"A decision to admit evidence of prior convictions rests in the sound discretion of the trial judge. People v Jackson, 391 Mich 323; 217 NW2d 22 (1974). Review of a trial court's determination to admit evidence of prior convictions involves two considerations: (1) whether the trial judge recognizes his or her discretion to decline to admit evidence of the convictions, and (2) whether the trial judge's decision is so palpably and grossly violative of fact and logic as to amount to an abuse of discretion. People v Carpenter, 120 Mich App 574; 580; 327 NW2d 523 (1982).

"The factors which the trial judge must weigh in determining whether to suppress evidence of prior convictions were articulated by this Court in People v Crawford, 83 Mich App 35, 39; 268 NW2d 275 (1978), as follows:

"'(1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a "bad man" or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which

-4-

outweighs the probative value on the issue of credibility?), and
(3) the effect on the decisional process if the accused does not
testify out of fear of impeachment by prior convictions (are
there alternative means of presenting a defense which would not
require the defendant's testimony, i.e., can his side of the
story be presented, or are there alternative, less prejudicial
means of impeaching the defendant?).'" Id., slip op pp 2-3.

In response to defendant's motion to suppress these
convictions the trial court held:

"THE COURT:   The Court has to consider the age of the
conviction and -- it's been brought to the Court's attention two
of them are more than ten years old and they'll be excluded.

"The other thing we have to consider is the offense
itself, does it involve truth, theft, and dishonesty?   Armed
robbery and larceny in a building both involve truth and honesty.
They're both less than ten years old.   I have to consider
similarity, neither of those will be similar to the offense the
defendant is being tried for now.   Even if the cases are similar,
and the court should take into consideration bias or prejudice --
the question is whether or not the prejudice outweighs any
probative value from admitting a prior record before the jury.

"I think under the circumstances that credibility is
going to be an issue in this matter.   In order to judge the
credibility of any person, that person's past should be known by
the jury.   I have to consider the affect on the judicial process.
It has been indicated that your client is going to testify.
Judicial process is not going to be affected by permitting his
record to be read to the jury.

"We have two cases involving truth and honesty, both
less than ten years old, they're relevant.   The probative value
certainly outweighs any prejudice.   Under the circumstances,
they're relevant.   The two cases less than ten years old can be
used by the People for purposes of impeachment."

We agree with the trial court.   The offenses involved

are theft offenses which bear on defendant's credibility.

Further, they were not for substantially the same conduct for

which defendant is now on trial.   Finally, although defendant

decided not to take the stand and testify on his own behalf, the

circumstances surrounding his confession, i.e., his involuntary

confinement in a psychiatric institute and the fact that he was

on medication when this statement was given, came out in the

prosecutor's case-in-chief and defense counsel had sufficient

opportunity to cross-examine in this regard.   The issue at trial

was whether defendant murdered Michelle Jackson.   Hence, his

credibility was a major issue.   This Court has recognized the

importance of allowing the jury to hear evidence of any prior

convictions of a defendant or a complaining witness where the

case turns on which party the jury will believe.   Wesley, supra,

p 4, and the cases cited therein.

In view of the foregoing we affirm defendant's convictions.

Affirmed.

/s/ D. E. Holbrook, Jr.
/s/ R. S. Gribbs
/s/ C. W. Simon

# Order

Michigan Supreme Court
Lansing, Michigan

Dorothy Comstock Riley
Chief Justice

Charles L. Levin
James H. Brickley
Michael F. Cavanagh
Patricia J. Boyle
Dennis W. Archer
Robert P. Griffin
Associate Justices

Entered:   January 29, 1988

81349 & (40)

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

 EDDIE LLOYD,

     Defendant-Appellant.

SC:  81349
CoA:  86045
LC:  85-00376

---

On order of the Court, the delayed application <u>in propria</u> <u>persona</u> for leave to appeal and request for review under MCR 7.303, are considered. Since the defendant has applied for leave to appeal, the letter request is DENIED as moot. The delayed application <u>in propria persona</u> is DENIED because we are not persuaded that the questions presented should be reviewed by this Court.

0126



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of Court.

_January 29_, 1988

                                                 Clerk



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE J. LLOYD,

       Petitioner,

vs.

HENRY GRAYSON,

       Respondent.

Civil Action No.
89-CV-70739-DT

HON. BERNARD A. FRIEDMAN

## MEMORANDUM OPINION AND ORDER
## GRANTING RESPONDENT'S MOTION TO DISMISS

## Introduction

       Eddie J. Lloyd, presently incarcerated at the State
Prison for Southern Michigan, has brought this action in pro per
for a writ of habeas corpus.  Petitioner was convicted on May 2,
1985, by a Detroit Recorder's Court jury of first degree murder,
and is now serving a life sentence.  Petitioner's appeals to the
Michigan Court of Appeals and the Michigan Supreme Court were
unsuccessful.

       On August 12, 1988, Lloyd filed a petition for a writ
of habeas corpus in this court.[1]  On January 31, 1989, the court
dismissed that petition because it contained unexhausted grounds
for relief, and because several of the grounds were
insufficiently specific.

---

[1]  Eddie Joe Lloyd v. Henry Grayson, No. 88-CV-73351-DT.

ENTERED
MICROX

In the instant petition, Lloyd presents three grounds for relief:

(1) The trial court erred in admitting defendant's/petitioner's confession into evidence.

(2) The judge's ruling at the Walker hearing that defendant/petitioner's statement was voluntary was clearly erroneous and an abuse of discretion.

(3) The trial court abused its discretion by refusing to suppress the defendant/petitioner's prior convictions for robbery armed and larceny in a building.

On June 4, 1991, the court accepted a magistrate judge's recommendation to grant respondent's motion to dismiss. Grounds one and two were dismissed because they had been raised in the prior petition. Ground three was dismissed on the merits.

In an order filed November 4, 1991, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal as to the third ground for relief, but remanded the matter for consideration of grounds one and two on their merits.

## Legal Standards and Application

Petitioner argues the trial court erred

(1) in determining that his confession was voluntary, and

(2) in admitting his confession into evidence at trial because it was involuntary and obtained in violation of petitioner's rights

2

under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).[2] The court finds petitioner's arguments to be without merit.

As to the first argument, the Supreme Court has held that the voluntariness of a confession need only be established by a preponderance of the evidence. See <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972). Moreover, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).

As for the second argument, <u>Miranda</u> warnings apply only to custodial interrogation:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has

_____

[2] In Miranda, the Court stated:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. at 444.

3

been taken into custody or otherwise deprived of his
freedom of action in any significant way." Subsequently
we have found the Miranda principle applicable to
questioning which takes place in a prison setting during
a suspect's term of imprisonment on a separate offense,
and to questioning taking place in a suspect's home,
after he has been arrested and is no longer free to go
where he pleases.

                        *        *        *

[P]olice officers are not required to administer Miranda
warnings to everyone whom they question. Nor is the
requirement of warnings to be imposed simply because the
questioning takes place in the station house, or because
the questioned person is one whom the police suspect.
Miranda warnings are required only where there has been
such a restriction on a person's freedom as to render him
"in custody."

Oregon v. Mathiason, 429 U.S. 492, 494-95 (1977) (citations

omitted). See also Miranda, 384 U.S. at 444; People v. Martin,

78 Mich. App. 518, 526 (1977). Further, "[w]henever the State

bears the burden of proof in a motion to suppress a statement

that the defendant claims was obtained in violation of our

Miranda doctrine, the State need prove waiver only by a

preponderance of the evidence." Connelly, 479 U.S. at 168.

        After a careful review of the transcript of the Walker

hearing[3] conducted in this matter, the court is convinced that

the trial judge did not err in concluding that petitioner's

confession was voluntary, and that petitioner waived his Miranda

_____

        [3] In People v. Walker, 374 Mich. 331 (1965), the Michigan
Supreme Court, interpreting Jackson v. Denno, 378 U.S. 368
(1964), held that if the voluntariness of a defendant's
confession is at issue, it must be determined by the trial judge
at a separate hearing. A transcript of the Walker hearing in
this matter, and of the hearing on defendant's motion to
suppress, were filed in connection with the prior habeas
proceeding. See id., docket entries #12 & #13.

                                4

·rights to counsel and to remain silent.  To the contrary, the
evidence of voluntariness and waiver was overwhelming.

      The record shows that at the time he gave his
confession, petitioner was a patient at the Detroit Psychiatric
Institute (DPI).  According to the psychiatrist in charge of
petitioner, Dr. Han, who testified at the March 1, 1985, hearing,
petitioner was referred to DPI in September 1984 (Tr. 11).  Dr.
Han diagnosed bipolar affective disorder, or manic depressive
illness (Tr. 14).  On October 5, 1984, the probate court ordered
petitioner to remain at PSI for 60 days of treatment (Tr. 15).
Dr. Han prescribed Narvine, an anti-psychotic medication (a
"heavy tranquilizer"), to "reduce [petitioner's] hyperactive
behavior and elated mode" (Tr. 15-16).  Dr. Han further testified
that when police officers came to PSI to interview him,
petitioner "indicated he sent a letter to them, he was expecting
them coming to see him" and that petitioner "wanted to see them"
(Tr. 18).  Dr. Han stated that despite petitioner's condition, he
"knew what he was doing and what would be the consequences of his
behavior" (Tr. 21).  Dr. Han saw no evidence that petitioner was
hallucinating (Tr. 22).  The police officers checked with Dr. Han
each time prior to speaking with petitioner (Tr. 22).

      At the continuation of the hearing on March 8, 1985,
testimony was taken from the two City of Detroit police officers
who interviewed petitioner, Sylvia Milliner and Thomas DeGalan.
Milliner testified that she received several letters from
petitioner stating "[t]hat he had information and he needed to

5

see me" (Tr. 7). Milliner received a letter in October 1984 in which petitioner indicated he had information about the homicide of Michelle Jackson[4] (Tr. 7). Milliner and DeGalan visited petitioner at DPI on October 18 "[t]o discuss with Mr. Lloyd what was his meaning and purpose -- that -- the information he gave me in the letter, what he was talking about" (Tr. 9). During this interview, petitioner did not admit to any involvement in the murder, but indicated he "would do everything he could to assist the police" (Tr. 11).

Officer DeGalan testified that the letter from petitioner regarding Michelle Jackson "aroused my interests" because "[i]t involved information that would be known only to the officers of Squad 3" (Tr. 13-14). DeGalan stated that he and Milliner viewed the discussion with petitioner as a "routine investigative matter to go out and follow this information up" (Tr. 14). At the October 18 interview, the officers did not place petitioner under arrest and they did not give him <u>Miranda</u> warnings (Tr. 15). Petitioner "quickly began to engage us in conversation" (Tr. 15), and again told the officers a detail about the Michelle Jackson murder known only to police (Tr. 15-16). Petitioner then gave a detailed description of a rape he said he had committed in 1974 (Tr. 16). DeGalan testified that this description contained "parallels or similarities" to the Michelle Jackson case (Tr. 17).

---

[4] Petitioner was later convicted of murdering Michelle Jackson.

On October 23, 1984, DeGalan interviewed petitioner a
second time at DPI (Tr. 19). DeGalan did not arrest petitioner,
and did not give him Miranda warnings (Tr. 19-20). Petitioner
had sent DeGalan a letter naming a possible suspect and
indicating he wanted to talk with DeGalan further (Tr. 20). At
the interview, petitioner told DeGalan "he wanted to confess to
the murder and he went through a list of things that he did" (Tr.
22). At DeGalan's request, petitioner drew a map showing "where
he came from and where he picked her up and how he took her
around" (Tr. 22).

DeGalan interviewed petitioner a third time on October
25, 1984, "to make sure . . . this information was, in fact,
coming from him by his own knowledge" (Tr. 23). DeGalan did not
arrest petitioner and did not give him Miranda warnings (Tr. 23).
Petitioner correctly drew a picture of Michelle Jackson's
earrings (Tr. 23).

DeGalan stated that each interview occurred at
petitioner's invitation:

> During the meetings conducted at the hospital, on each
> of those occasions, he would almost insist or in fact
> insist, to use the proper terminology, that, "you come
> back," and, "Why were you going so slow in this matter?"
> And, "Let's get things going. Let's get it moving.
> Where have you been?" Things along those lines.

(Tr. 33-34.)

On October 26, 1984, DeGalan interviewed petitioner
again (Tr. 24). At this interview, he gave petitioner the
Miranda warnings (Tr. 24-25). Petitioner read the Miranda

7

...ITION UNDER 28 USC § 2254 FOR WR_ OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED (K)

| United States District Court | District |
|---|---|

| Name | Prisoner No. | Docket No. |
|---|---|---|
| Eddie Joe Lloyd | #123019 | |

Place of Confinement

Charles Egeler Correctional Facility
P.O. Box 8000
Jackson, Michigan 49209

| Name of Petitioner (include name upon which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|

EDDIE JOE LLOYD     V.     HENRY GRAYSON

The Attorney General of the State of: **MICHIGAN**

TIME STUDY CASE

PETITION     Record Time Spent by Judge or Magistrate

1. Name and location of court which entered the judgment of conviction under attack __Recorder's Court for__ __City of Detroit, Frank Murphy Hall of Justice,1441 St. Antoine St., Detroit, MI__ 48226

2. Date of judgment of conviction _____ May 2, 1985 _____ Sentenced: May 21, 1985

3. Length of sentence_____ Mandatory Life Imprisonment.

4. Nature of offense involved (all counts) _____ First-degree murder

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   _____ N/A _____

6. Kind of trial: (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

(2)

9. If you did appeal, answer the following:(By Atty. Robert E. Slameka, I had no input).

    (a) Name of court    Michigan Court of Appeals

    (b) Result    Affirmed, #86045, unpublished Per Curium opinion.

    (c) Date of result    July 16, 1987

    (d) Grounds raised    (1)  DID THE TRIAL COURT ERR IN ADMITTING THE DEFENDANT'S CONFESSION INTO EVIDENCE?

        (2)  DID THE TRIAL COURT ABUSE IT'S DISCRETION BY REFUSING TO SUPPRESS THE DEFENDANT'S PRIOR CONVICTIONS FOR ROBBERY ARMED AND LARCENY IN A BUILDING?

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court    Michigan Supreme Court

        (2) Nature of proceeding    Letter Request for Review Under Michigan Rules of Court, 7.303., and Delayed Application for Leave to Appeal From Decision of Court of Appeals.

        (3) Grounds raised    Same two issues above, and 21 additional Issues in Delayed Application For Leave to Appeal, not raised in my Appeal of Right.

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

        (5) Result    Both Letter Request for Review Under MCR. 7.303 and Delayed Application For Leave to Appeal DENIED.

        (6) Date of result    January 29, 1988, (Supreme Court No. 81349).

    (b) As to any second petition, application or motion give the same information:

        (1) Name of court    Michigan Supreme Court

        (2) Nature of proceeding    Motion For Reconsideration of Order of January 29, 1988.

(3) Grounds raised __Same two grounds raised in Letter Request for Review Under__

__MCR. 7.303 and 21 additional issues raised in Delayed Application For__

__Leave to Appeal. Also, cited People v Hill. 429 MICH 382.(1987) because__

__Defendant's first issue on appeal of right fell within the preview of__

__People v Hill. and was pending when Hill was decided.__

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5) Result _____ __Motion For Reconsideration was DENIED__

(6) Date of result _____ __March 28, 1988, Order# 81349(50).__

(c) As to any third petition, application or motion, give the same information:
(1) Name of court _____ __Recorder's Court For the City of Detroit__

(2) Nature of proceeding _____ __Motion to Remand For A Brady Hearing__

(3) Grounds raised ① THAT THE ALLEGED TAPED STATEMENT/RECORDING PLAYED AT MY TRIAL

WHICH CONVICTED ME WAS NOT LISTED IN THE ORDER FOR DISCOVERY, AND WAS A

"FRAUD" AND "MANUFACTURED." ② THAT THERE WAS AN UNLAWFUL VIOLATION OF THE DIS-
COVERY ORDER BY THE DETROIT POLICE DEPARTMENT,(HOMICIDE SECTION), AND THE WAYNE
COUNTY PROSECUTOR'S OFFICE IN THAT A MULTITUDE OF LAB & SCIENTIFIC REPORTS,
POLICE REPORTS,ASSORTED STATEMENTS AND OTHER "OFFICIAL DOCUMENTS" WERE WITHHELD
WHICH HAVE SUBSTANTIAL AND PROBATIVE VALUE IN EXONERATING AND CLEARING THIS
INNOCENT DEFENDANT, CONCLUSIVELY AND BEYOND ANY AND ALL REASONABLE DOUBTS.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5) Result _____ __Motion to Remand For A Brady Hearing   DENIED.__

(6) Date of result _____ __May 3, 1988__

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.       Yes ☒   No ☐   (Was initiated in Supreme Court)
(2) Second petition, etc.      Yes ☒   No ☐   (Was initiated in Supreme Court)
(3) Third petition, etc.       Yes ☐   No ☒

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

__I have been left to fend for myself in Propria Persona. I do consider my-__

__self a layman, I lack the skills, expertise and resources to handle these__

__complex matters of litigation. I desperately need the assistance of an__
Attorney to assist me. My request for appointment to the trial Court has
been repeatedly denied.

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: __THE JUDGE'S RULING AT THE WALKER HEARING THAT DEFENDANT'S STATEMENT__

__WAS VOLUNTARY WAS CLEARLY ERRONEOUS AND AN ABUSE OF DISCRETION.__

Supporting FACTS (tell your story *briefly* without citing cases or law): __It should be noted in the__

__walker Hearing transcripts that no statement or anything else in reference to__

__an "alleged statement " was read into the record by P.O. Thomas DeGalan or any-__

__one else for that matter.  If the Trial judge never heard the "alleged statement"__,

__how could he have ruled that, " I believe the statement in this case was volun-__

__tary and the People may use it?" (Walker Hearing transcripts, pg. 42, 3/8/85)__

B. Ground two: __CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE PROSECUTION__

__TO DISCLOSE TO THE DEFENDANT EVIDENCE FAVORABLE TO THE DEFENDANT.__

Supporting FACTS (tell your story *briefly* without citing cases or law): _____
__SEE ATTACHMENT__

(5)

GROUND TWO:   CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE
ATTACHMENT     PROSECUTION TO DISCLOSE TO THE DEFENDANT EVIDENCE FAVORABLE
               TO THE DEFENDANT.

Since defendant's conviction and sentence and during the pendency of defen-
dant's appeal, through subsequent Freedom of Information Requests, defendant
discovered that there was a deliberate, Unlawful violation of the Discovery
Order in this criminal cause by the Detroit Police Department,(Homicide Sec-
tion) and the Wayne County Prosecutor's Office, in that the following was
withheld, but not limited to:

(a).  Evidence that Search warrant existed(#01341), and that subsequent lab
& scientific reports prepared on hair, blood and saliva from defendant which
would have and still will clear this "innocent" defendant conclusively be-
yond any reasonable doubts.(SEE ATTACHMENT-APPENDAGE #DPD-FOIA #7).

(b).  Evidence that an "Un-named suspect"had been arrested in this case on
1/30/84.   (SEE ATTACHED APPENDAGE #DPD-FOIA2 #6).

(c).  Evidence that 2 automobiles,(two) were seized on 1/26/84 & 1/27/84,
in this case.(presumably pursuant to search warrants).
Who are the owners?                    (SEE ATTACHED APPENDAGES #8A & 9A).
THE FOLLOWING WITNESS STATEMENTS,(WITHHELD):
(d).  Mrs. Carlotta Jackson (Mother of deceased).

(e).  Ms. Lawana Hughes (aunt of deceased).

(f).  Mr. Anthony Williams (A "mystery person" present after body was found).

(g).  Mr. James Brooks (boyfriend of the deceased).

(h).  Ms. Mary Felton & her son (live directly across from the vacant
garage and would have testified that they were in the window that
morning,1/24/84 and saw nor heard nothing).

(i).  Mr. Alex A. Jackson  (Father of deceased).

(j).  Statements of girlfriends & acquaintances who would walk to the bus
stop with Michelle in the mornings.

(k).  Statement of bus driver who drove that route that morning(1/24/84).

(l).  Ms. Rosie L. Forman- 18878 Dequindre, who would have testified that
the automobile bearing plates 149-MAF was registered to her, is a
1978 2 door plymouth,(not a Biscayne station wagon), and was never
stolen.

(m).  A multitude of other statements, police reports, and "OFFICIAL DOCUMENTS"
never made available to the defense, which still have substantial and
probative value in clearing this "Innocent defendant"beyond all doubts.
The homicide file in this case is voluminous, perhaps 8, maybe 10 inches
thick. That file contains the NAMES/IDENTITIES of the killers of the de-
ceased, Michelle Kimberly Jackson.  Counsel and myself in the lower
Court received documents less than one, (1) inch thick.

-i-

C. Ground three: __NO PROPER FOUNDATION WAS LAID FOR THE INTRODUCTION OF ANY RECORDING__

__AT TRIAL.   FURTHERMORE, NO RECORDING OR "ALLEGED TAPED STATEMENT" WAS LISTED IN THE ORDER FOR/GRANTING DISCOVERY.__

Supporting FACTS (tell your story *briefly* without citing cases or law): __Throughout the entire pro-__

__ceedings, the People contended that P.O. Thomas DeGalan had taken a "written__

__statement" from the defendant on 10/26/84, while he was an involuntary patient__

__at Detroit Psychiatric Institute. (The "alleged statement was written out by P.O.__

__Thomas DeGalan). No "alleged recording" or "alleged taped statement" was mention-__
ed or alluded to in any proceedings up and to trial.  No one, (especially the De-
fense), had advanced knowledge that any such "alleged recording" existed until it
was improperly and illegally introduced without proper foundation on its
admissibility.  People's entire case-inchief was "alleged written statement."

D. Ground Four:

CONVICTION OBTAINED BY USE OF A COERCED/FALSE CONFESSION.

(SEE ATTACHED APPENDAGES-COD#1 & PXI) **TIME OF DEATH** **TIME OF DEATH***
Supporting FACTS (tell your story *briefly* without citing cases or law): __The People allege that the__

__Defendant "allegedly confessed" to murdering the deceased, Michelle Jackson, on__

__the morning of January 24, 1984 ,(sometime between 7:00 am & 7:30 am).  Based__

__on the two attached documents I am submitting, we now know that that would have__

__to be COMPLETELY FALSE.  Michelle Jackson died sometime between 12:01 am and__
neither
__10:15 a.m. the morning of January 25, 1984.__ Defendant∧confirms nor deny whether
any "alleged statement" was given in this matter by him. He was under medication,
any "alleged statement" was at the bequest of the Police and solely for the pur-
pose of "BRINGING OUT THE REAL KILLERS OF MICHELLE JACKSON."(Emphasis Added).

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

__I have attempted to raise grounds listed in 12B,C, and D in the trial court by way__

__of Motion and Letters.  I was never visited by appellate counsel to assist and par-__

__ticipate in my appeal of right, therefore I had no means of raising these issues.__
Also, much of the information included in those issues were learned by me through
Freedom of Information Requests during the pendency of my case on appeal

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____Mr. Charles D. Busby,   1575 E. Lafayette, Suite 205,____

_____Detroit, MI  48205____

(b) At arraignment and plea _____None_____

_____

(c) At trial _____ <u>Mr. Stanford M. Rubach, Attorney-at-Law</u>
42150 Seven Mile Road
Northville, Michigan 48167

(d) At sentencing _____ <u>Mr. Stanford M. Rubach, Attorney-at-Law</u>
42150 Seven Mile Road
Northville, Michigan 48167

(e) On appeal _____ <u>Mr. Robert E. Slameka, Attorney-at-Law</u>
1800 Book Building
Detroit, Michigan  48226

(f) In any post-conviction proceeding _____ In Propria Persona

(g) On appeal from any adverse ruling in a post-conviction proceeding ____ In Propria Persona.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐  No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future:  ___ None

(b) Give date and length of the above sentence: _____ None

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☒  N/A

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__<u>6/29/88</u>__.
　(date)

_____
Signature of Petitioner

(7)

LABORATORY TECHNICIAN REPORT

| PAGE NO. FOUR (4) | "Un-named Suspect" | LAB NO. B-0056-84 |
| --- | --- | --- |

$0_2$    One (1) white sweat sock with blue/green stripe trim (similar to Item $I_6$). No blood/seminal fluid stains or hairs were observed. N.O.W.B.

$0_3$    One (1) blue fuzzy knee-sock (similar to Item $I_7$). No blood/seminal fluid stains or hairs were observed. N.O.W.D.

$0_4$    One (1) burgundy boot (right foot - "Jennifer Originals" - size 8) was submitted, with white dusting powder on rubber portion. No blood/seminal fluid stains or hairs were observed. N.O.W.D.

$0_5$    A pair of burgundy knit/suede gloves, were submitted and examined for blood/seminal fluid stains, and hairs with NEGATIVE results. N.O.W.D.

$0_6$    A brown/gold satchel ("Louis-Vitton" brand - design matches belt-Item $0_1$) was submitted, and examined for blood/seminal fluid stains with NEGATIVE results. A pencil, piece of "Bubble Yum," and a small plastic bottle, were observed inside the satchel. Several hairs were collected from inside the satchel, for comparison. Conclusion to follow.

NOTE: Unknown hairs pplaced on EPT. #491118.

On 1-30-84, at 8:55 a.m., ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was accompanied by ▓▓▓▓▓▓ (Homicide Section) to the Detroit Police Crime Lab to have blood, saliva, and hair samples taken. TYPE AB Rh+ . Conclusions on hairs to follow.
NON-SECRETOR

CONCLUSIONS ON HAIRS:

1. Numerous unknown hairs collected from clothing on EPT. #138996 (Item I) were compared to known hair samples of deceased, Michelle Jackson and were found to be SIMILAR and could have a common origin. The unknown hairs were dissimilar to hair samples of ▓▓▓▓▓▓▓▓▓▓

2. Unknown hairs collected from ski mask on EPT. #061474 (Item M), were compared to known hair samples of deceased, Michelle Jackson, and ▓▓▓ ▓▓▓▓▓▓▓▓, and were found to be DISSIMILAR to both known samples and could not have a common origin.

3. Unknown hairs collected from pants on EPT. #061470 (Item $0_1$) were compared to known hair samples of deceased, Michelle Jackson and were found to be SIMILAR, and could have a common origin. The unknown hairs were DISSIMILAR to known hair samples of ▓▓▓▓▓▓



(4)

APPENDAGE#DPD-FOIA2 #6